**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | | **CRIMINAL ACTION** |
| **v.** | | |
| **YANTHONIC HERRERA** | | **NO.  23-96** |

**<u>MEMORANDUM</u>**

**HODGE, J.**                                          **September 18, 2023**

## I.    INTRODUCTION

Defendant Yanthonic Herrera, by and through his counsel, filed a Motion to Suppress all physical evidence obtained against him after a search warrant for the premises located at 7131 Beech Tree Drive in Brookview Apartments in Elkins Park, Montgomery County, Pennsylvania was executed on July 23, 2019. The standard of review by the Court in this case is not a *de novo* review of the magistrate judge's finding of probable cause for the search warrant, rather the Court must "determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 236). Specifically, the Court must answer two questions: (1) whether the magistrate who issued the warrant had a substantial basis for concluding that probable cause was present and (2) whether the officers who executed the warrant relied on its authority in good faith. If the answer to either question is "yes," then the Court must deny Defendant's Motion to Suppress. For the reasons that follow, the Court answers both questions in the affirmative. As such, the Court denies Defendant's Motion to Suppress.

## II.     BACKGROUND

### A.     Factual Background[1]

On July 23, 2019, members of the Montgomery County Detective Bureau ("MCDB") and the Federal Bureau of Investigation ("FBI") applied for and were granted a search warrant for 7131 Beech Tree Drive, Elkins Park, Cheltenham Township, Montgomery County, Pennsylvania, 19027. (*See* ECF No. 44 at 20–29.) The following pertinent details are contained therein.

The first section of the affidavit of probable cause ("Affidavit") contained in the search warrant application details the training and experience of the affiants, Detective James Carbo of the MCDB and Special Agent William R. Wickman of the FBI,[2] regarding narcotics investigations. (*See id.* at 21–22.) The second section of the Affidavit explains the information received from a confidential informant in September 2018 that Defendant Yanthonic Herrera was involved in heroin distribution in Philadelphia and the surrounding area. (*See id.* at 22–23.) The affiants state that the confidential informant's basis for the information was from conversations with members of Defendant Herrera's drug trafficking operation. (*See id.* at 23.) The same confidential informant was known to the affiants as credible because information previously provided by the informant led to "numerous large drug seizures, arrests and convictions." (*Id.*) The affiants spoke with the

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Detective James Carbo is a twenty-four (24) year law enforcement veteran, currently serving with the MCDB's Violent Crime Unit. (*See* ECF No. 44 at 21.) Detective Carbo has experience with the Homicide Unit, the Borough of Conshohocken Police Department, and the MCDB's Narcotics Enforcement Team. (*See id.*) Also, Detective Carbo is a member of the Bucks and Montgomery County Safe Streets Task Force, which identifies and prosecutes criminal enterprise groups responsible for drug trafficking, money laundering, and more. (*See id.*) Special Agent William R. Wickman has been a Special Agent with the FBI since 2005. (*See id.* at 22.) Special Agent Wickman is a member of the Philadelphia Division Safe Streets Violent Gang Task Force, which investigates local gangs, crimes of violence, and drug trafficking. (*See id.*) Both Detective Carbo and Special Agent Wickman have experience with drug trafficking investigations, involving search and arrest warrants, use of confidential informants, and other advanced investigative techniques. (*See id.* at 21–22.)

same confidential informant again in the week prior to applying for the search warrant and completing the Affidavit. (*See id.* at 23.)

Brookview Apartments is the location of 7131 Beech Tree Drive. The third section of the Affidavit details the fixed, mobile, and electronic surveillance of Defendant Herrera conducted by the FBI beginning in October 2018. (*See id.* at 23–24.) During this surveillance, Defendant was seen driving a Gold Buick Enclave, and, many of these times, he was in the parking lot of Brookview Apartments. (*Id.*) The law enforcement investigative team also identified other vehicles utilized by Defendant parked for long periods of time and overnight in the Brookview Apartments parking lot. (*Id.*) On one occasion law enforcement observed an identified individual, Myriam Sevilla, operating the Buick Enclave. (*Id.*) The affiants allege in the Affidavit that "Sevilla is known to this investigative team as Herrera's long term live in girlfriend," or stated differently, that "Herrera and Sevilla [were] in a romantic relationship and live[d] together." (*Id.*) Special Agent Wickman utilized a law enforcement database and determined that Myriam Sevilla was associated with Apartment 7131, Brookview Apartments at Elkins Park, Cheltenham Township, Montgomery County, Pennsylvania. (*Id.*) This section of the Affidavit concludes with the statement, "Due to all of this information we believe Herrera has access to this residence." (*Id.*)

The fourth section of the Affidavit details an alleged kidnapping involving Defendant Herrera. (*See id.* at 24–25.) The factual circumstances stated in the Affidavit regarding the alleged kidnapping stated as follows: On July 22, 2019, the FBI became aware of a kidnapping that happened on July 20, 2019. (*Id.*) On July 20, 2019, the victim was picked up in a Buick Enclave, "the same vehicle . . . operated by Herrera and seen at his residence, located at 7131, Brookview Apartments[.]" (*Id.*) Maxwell Gomez, Junior R. Soriano Felix, and Defendant were in the vehicle when the victim was picked up. (*Id.*) Law enforcement was able to determine that at approximately

3

9:45 p.m., Defendant's Buick Enclave arrived at 1808 Afton Street in Philadelphia, Pennsylvania. (*Id.*) The victim later explained to police, that once he was inside 1808 Afton Street, he was shown a video by Defendant and accused of burglarizing a residence allegedly used for drug trafficking and controlled by Defendant. (*Id.*) The victim was subjected to further questioning and assaulted, as he was taped to a chair and held against his will, but eventually, the victim escaped. (*Id.*) An iPhone 8 and $200 were stolen from the victim during this incident. (*Id.*) Law enforcement was able to determine that when Defendant left 1808 Afton Street, he was driving the Buick Enclave and believed to be wearing red colored shorts and a dark in color shirt. (*Id.*)

The fifth section of the Affidavit details an attempt to arrest Defendant Herrera and other individuals on July 23, 2019 that were involved in the alleged kidnapping on July 20, 2019. (*Id.* at 25–26.) Specifically, the affiants state that surveillance saw Defendant on July 23, 2019 driving his Buick Enclave, "in the parking lot of Brookview apartments in close proximity to his residence." (*Id.*) At that moment, law enforcement was not able to safely arrest Defendant Herrera. (*Id.*) Law enforcement attempted mobile surveillance to follow Defendant, but he was lost "in the vicinity of his apartment." (*Id.*) Defendant was later observed exiting a property on Lawrence Street in Philadelphia, which surveillance had previously identified as being part of Defendant's organization. (*Id.*) Law enforcement attempted to stop Defendant's vehicle, but he fled. (*Id.*) Eventually Defendant abandoned his vehicle and fled into the woods. (*Id.*) At the time of submitting the Affidavit, Gomez and Felix had been arrested but law enforcement had not located Defendant Herrera. (*Id.*) The fifth section of the Affidavit next details subsequent searches of the Lawrence Street residence and Defendant's Buick Enclave that yielded "packaging material consistent with the distribution of Heroin/Fentanyl." (*Id.*) The Affidavit went on to state the many

common traits and customs of drug dealers based on the training, experience, and knowledge of the affiants. (*Id.* at 26–28.)

The sixth and final section of the Affidavit explains the affiants' concern that Defendant Herrera knew he was wanted by law enforcement and that Defendant Herrera may try to "enter his residence" under the cover of night in an attempt to conceal or destroy evidence. (*Id.* at 28.) As such, the affiants requested a search and seizure warrant to be served at night and averred they would find evidence of Defendant's drug trafficking and evidence related to the kidnapping. (*Id.*) On July 23, 2019, Magisterial District Judge Margaret Hunsicker in Montgomery County, Pennsylvania granted the requested warrant (*Id.* at 29.), and the warrant was executed the same day. (*See* ECF No. 44 at 4.)

## B.    Procedural History

On July 29, 2019, the Honorable Thomas J. Rueter issued a complaint and warrant for Defendants Yanthonic Herrera and Myriam Sevilla charging them both with possession with the intent to distribute and aiding and abetting possession with the intent to distribute 1 kilogram or more of heroin and 400 grams or more of fentanyl in violation of Title 21 United States Code Section 841(a)(1)(A) and Title 18 United States Code Section 2. On July 20, 2022, Defendant Herrera was arrested pursuant to an arrest warrant issued on July 19, 2022. After his arrest, the time in which the Government was obligated to file an indictment or information was extended several times on motion of the Government without opposition from defense counsel. On March 8, 2023, Defendant Herrera was indicted by a grand jury sitting in the Eastern District of Pennsylvania and charged with possession with the intent to distribute and aiding and abetting possession with the intent to distribute 1 kilogram or more of heroin and 400 grams or more of fentanyl in violation of Title 21 United States Code Section 841(a)(1)(A) and Title 18 United States Code Section 2. On April 27, 2023, Defendant filed a motion to suppress claiming that his

constitutional rights were violated when law enforcement searched his apartment at 7131 Beech Tree Drive in Brookview Apartments in Elkins Park, Montgomery County, Pennsylvania because the affidavit of probable cause lacked evidence to establish probable cause and the good-faith exception[3] does not apply. (*See* ECF No. 39.) The Government responded in opposition, (ECF No. 44.), and the Court held a suppression hearing on August 9, 2023.

## III.    LEGAL STANDARD

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "[F]or a seizure [or search] to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)); *see also United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). Probable cause exists when, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the court is presented with an application for a search warrant based on probable cause, a magistrate judge "is to make a practical commonsense decision," *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (quotation omitted), and "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Hodge*, 246 F.3d 301, 305–06 (3d Cir. 2001)

---

[3] The good faith exception to the warrant requirement provides that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993).

When reviewing a magistrate judge's determination of probable cause to issue a warrant, a district court should "[pay] great deference" to the magistrate's decision. *Gates*, 462 U.S. at 236. This standard means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 237 n. 10. "[T]he role of the reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 236). If a substantial basis exists to support the probable cause finding, the Court must uphold that finding even if it or a "different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting *United States v. Jones*, 994 F.2d 1051, 1057 (3d Cir. 1993)).

Such deference, however, "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011); *see also United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983). Rather, the duty of the reviewing court is to "ensure that the state district justice had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause." *United States v. Mortimer*, 387 F. App'x 138, 140 (3d Cir. 2005) (citing *Jones*, 994 F.2d at 1054); *see also Conley*, 4 F.3d at 1205 ("Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place, a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found.") (internal quotation marks omitted).

**IV.     DISCUSSION**

**A.       The magistrate judge had a substantial basis for concluding that probable cause was present.**

In their briefs and during oral argument, both the Government and defense counsel reference *Burton* as controlling authority to be applied in the evaluation of the facts of this case. In *Burton*, following a confidential informant being told about a large drug transaction taking place and law enforcement officers observing the alleged drug transaction, officers encountered the defendant, arrested him, searched his vehicle, and later obtained a search warrant to search his residence. *Burton*, 288 F.3d at 94–96. The defendant argued that law enforcement officers arrested him without probable cause; the subsequent warrantless search of his vehicle was unjustified; and the search warrant to search his residence was invalid, not supported by probable cause, and rested on illegally obtained evidence. *See id.* at 96–97.

Regarding the search of Burton's residence, the Third Circuit held that the evidence contained in the supporting affidavit—even without the challenged paragraphs—was sufficient to establish a fair probability that contraband would be found at the residence. *See id.* at 102–05. Specifically, the *Burton* Court considered that "direct evidence linking the place to be searched to the crime . . . is not required for the issuance of a search warrant." *Id.* at 103 (quoting *Jones*, 994 F.2d at 1056). Instead, probable cause "can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" *Id.* (quoting *Jones*, 994 F.2d at 1056).

This is particularly true when the crime under investigation is an alleged large-scale drug dealing operation where a person or persons are alleged, after months of surveillance, to be conducting narcotics transactions and, in addition, a kidnapping. Indeed, the Third Circuit has

repeatedly explained that "it is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences." *Burton*, 288 F.3d at 104; *see also United States v. Williams*, 974 F.3d 320, 351 (3d Cir. 2020); *Stearn*, 597 F.3d at 559–60; *Hodge*, 246 F.3d at 306. Still, a magistrate judge may make such an inference only if the evidence supports three preliminary premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." *Burton*, 288 F.3d at 104. The Third Circuit requires "some evidence" of each premise. *See Stearn*, 597 F.3d at 559.

The Court addresses each premise in turn. However, the Court does not view this Motion to Suppress through the myopic lens of only looking at the large-scale drug dealing investigation. The search warrant also requested a search for evidence related to the kidnapping, including the clothing worn and items taken during the kidnapping. This Court finds that the magistrate judge had a substantial basis to believe that evidence of a crime would be found in the Brookview Apartment.

### 1.    Evidence that Defendant was a drug dealer and/or participated in a kidnapping

The Affidavit supporting the search warrant provided a substantial basis for Judge Hunsicker to find probable cause that Defendant Herrera was a drug dealer. First, a confidential informant, who the affiants determined to be reliable in the past, informed law enforcement that Defendant was a drug dealer, and the victim of the kidnapping stated that he was kidnapped because Defendant alleged that the victim burglarized Defendant's narcotics operation. Second, the searches of the Lawrence Street residence and Defendant's Buick Enclave yielded packaging material consistent with the distribution of narcotics, specifically heroin/fentanyl.

Further, the Affidavit provided a substantial basis to find probable cause that Defendant Herrera participated in a kidnapping. The victim of the kidnapping provided specific and credible information identifying Defendant Herrera as one of his kidnappers. According to the victim of the kidnapping, he stated that he was picked up in a Buick Enclave by Defendant Herrera who also had Maxwell Gomez and Junior R. Soriano Felix in the vehicle at the time. The victim had his iPhone 8 stolen while in the vehicle and was taken to 1808 Afton Street, where he was shown a video by Defendant Herrera and, after being shown the video, was accused of burglarizing a residence allegedly used for drug trafficking and controlled by Defendant; subjected to questioning and assaulted; taped to a chair and held against his will; and had $200.00 stolen from him.

The Affidavit therefore contained not only evidence of drug dealing but also information that Defendant had kidnapped the victim, stole his phone and money, and that Defendant Herrera was wearing specific clothing when he committed the crime.

### 2.    Evidence that Defendant possessed or was domiciled at the apartment

The Court finds in this case that the Affidavit supporting the search warrant provided a substantial basis for Judge Hunsicker to find probable cause that Defendant Herrera possessed, had access to, or was domiciled at 7131 Beech Tree Drive in Brookview Apartments—for what was ultimately a correct inference.[4]

In *Burton*, the court noted the significance of the evidence that Burton parked his vehicle in close proximity to the house in question. *Burton*, 288 F.3d at 104 (citing *Jones*, 994 F.2d at 1057). Further, the *Burton* Court relied on the evidence provided taken in light of the affiants' training and experience. *See id.* at 105 ("Given the evidence possessed by the Task Force and taken

---

[4] *See* ECF No. 39 at 2 ("[Defendant] avers that the property was his residence[.]").

in light of Officer McEwen's training and experience, we believe his conclusion to be well supported[.]").

Here, Defendant Herrera was observed driving a Gold Buick Enclave on multiple occasions in the parking lot of Brookview Apartments over a period of several months based on law enforcement surveillance. On one occasion, law enforcement observed Myriam Sevilla, identified and averred by the affiants as the long-term live-in girlfriend of Defendant Herrera, operating the Buick Enclave. The law enforcement investigative team also identified other vehicles utilized by Defendant parked for long periods of time and overnight in the Brookview Apartments parking lot. Further after the kidnapping, and on the same day as Defendant's attempted arrest, members of law enforcement again saw Defendant Herrera in the Buick Enclave—that was known to be Defendant's vehicle—located "in the parking lot of Brookview apartments in close proximity to his residence." Although Apartment 7131 was registered to Myriam Sevilla, the Affidavit included a statement based on the affiants' knowledge, training, and experience that is persuasive under these facts:

> "Drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies. In our experience, those assets are placed in the names of family members or very trusted persons. Even though those assets are in other person's names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them."

(ECF No. 44 at 26.)

As stated, the review of this court is not *de novo*. Here, this Court is evaluating whether the contents of the Affidavit provided a substantial basis for the magistrate judge to make a "practical, commonsense decision" based on the totality of the circumstances. *Gates*, 462 U.S. at 238–39. Based on the totality of this evidence, the factual averments provided a substantial basis for the magistrate judge to make a decision that was reasonable under the circumstances and based on a fair inference that Defendant Herrera either possessed or was domiciled at Apartment 7131.

### 3.    Evidence that the apartment contained contraband

The Affidavit supporting the search warrant provided a substantial basis for Judge Hunsicker to find probable cause that the apartment contained contraband related to the drug dealing and/or the kidnapping. A warrant need not contain direct evidence linking a place and a crime, while it may be preferred or ideal that every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant. Instead, probable cause can be, and often is, inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." *Jones*, 994 F.2d at 1056. In *Burton*, the court emphasized the significance of temporal evidence supporting an inference that a residence may contain contraband. *See Burton*, 288 F.3d at 104 (citing *Whitner*, 219 F.3d at 297–98) ("While we generally accept the common sense proposition that drug dealers often keep evidence of their transactions at home . . . that inference is much stronger when the home is the first place a drug dealer proceeds following such a transaction.").

Here, the Court agrees with the Government that there is strong temporal evidence linking the apartment and the alleged crimes to create a substantial basis that contraband would be found in the apartment. On July 23, 2019, members of law enforcement again saw Defendant Herrera in the Buick Enclave "in the parking lot of Brookview apartments in close proximity to his residence." Defendant is next seen at the Lawrence Street residence. When law enforcement searched the Lawrence Street residence, they found packaging material consistent with the distribution of heroin/fentanyl. They did not find any drugs or contraband nor the clothes, phone, and money from the kidnapping. After Defendant Herrera left the Lawrence Street residence, law enforcement attempted to stop Defendant's Buick Enclave, but he fled into the woods and abandoned his vehicle. Law enforcement searched Defendant's Buick Enclave and following the

search they found packaging material consistent with the distribution of heroin/fentanyl. They did not find any drugs or contraband nor the clothes, phone, and money from the kidnapping. All of the above facts were coupled with the pressing circumstances that the affiants were actively looking for Defendant Herrera, who had fled from his vehicle, following the pursuit and could not locate him. Further, law enforcement was concerned that Defendant knew he was wanted and, based on their training and experience as stated in the Affidavit, suspected that Defendant may try to "access his residence" under the cover of night in an attempt to conceal or destroy evidence.

Like in *Burton*, Defendant Herrera's acts of leaving the vicinity of Apartment 7131 and heading directly to the Lawrence Street property—which was later established as a stash house— in a vehicle that was later discovered to contain drug packaging demonstrated a fair probability that Apartment 7131 would contain contraband linking it to Defendant's activities, including drugs, drug paraphernalia, proceeds from drugs sales, or evidence from the kidnapping.[5]

**B.     The officers who executed the warrant relied on its authority in good faith.**

The good faith exception to the warrant requirement provides that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). Since this Court finds

---

[5] Defendant cites *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016) as persuasive authority. However, the Court finds *Brown* distinguishable based on several factors: first, in *Brown*, there was a confidential informant that identified a third party—Marzell Middleton—as a heroin trafficker, not the defendant; here, a confidential informant and the victim of the kidnapping identified Defendant Herrera as a drug dealer. *See id.* at 378. Second, in *Brown*, the affidavit details surveillance into a third party, not the defendant; here, law enforcement surveilled Defendant Herrera for months and he was observed around Brookview Apartments multiple times. *See id.* Third, in *Brown*, the affidavit was silent as to whether drugs or paraphernalia were recovered from the defendant's vehicle; here, the Affidavit detailed searches of a stash house (the Lawrence Street property) and Defendant's vehicle that yielded packaging material consistent with the distribution of Heroin/Fentanyl. *See id.* at 379. Fourth and most importantly, in this matter, law enforcement was seeking the search warrant for evidence of drug dealing *and* participation in the kidnapping. In sum, the Court does not find *Brown* instructive.

that the magistrate judge had a substantial basis for concluding that probable cause existed, the search warrant was valid, and, thus, the search and seizure of the contraband and evidence recovered from 7131 Brookview did not violate Defendant Herrera's Fourth Amendment rights. However, even if there was no probable cause for a warrant, a court will admit evidence gathered pursuant to that warrant if the officers who executed it acted in reasonable reliance on a search warrant that a detached and neutral magistrate issued. *See United States v. Leon*, 468 U.S. 897, 926 (1984). The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23. "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307–08 (citing *Leon*, 468 U.S. at 922).

The Third Circuit has identified four "narrow circumstances . . . [where] the good faith doctrine is not sufficient to override the warrant's lack of probable cause." *Stearn*, 597 F.3d at 561.[6] The parties agree that the first two circumstances do not apply here. Defendant argues that the fourth circumstance applies here: when the "warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." *Tracey*, 597 F.3d at 151. However, the Court agrees with the Government that this circumstance is not applicable here. The search warrant and Affidavit very clearly describe the place to be searched—including its location, the

---

[6] "We have previously recognized that the good faith exception does not apply in four limited circumstances: (1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." *United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010) (quoting *United States v. Zimmerman*, 277 F.3d 426, 436–37 (3d Cir. 2002)).

township, the county, the zip code, how the address appears on the door, and the streets that abut the property—and the items to be searched for and seized—including the clothes Defendant Herrera was wearing during the kidnapping, the items taken during the kidnapping, any controlled substances, and more.

Defendant also argues that the third circumstance applies here: when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* An affidavit is "so lacking in indicia of probable cause" when it contains nothing more than a "bare bones" assertion that evidence will be found in the place searched. *Leon*, 468 U.S. at 926.

Defendant cites *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011) to support his argument. In *John*, the Third Circuit refused to employ the good faith exception for a warrant supported, in part, by the officer's assumption about the tendency of child sexual abusers to possess child pornography. *See id.* at 418–19. Specifically, the officer tried to use evidence of one crime to suggest probable cause for the presence of evidence of a different crime without any assertions in the affidavit to support the assumption. *See id.* at 419 (affirming the district court because "[e]ven a cursory reading of Officer Joseph's affidavit reveals that there is not a single assertion that [the defendant] was in any way associated with child pornography").

Here, the search warrant is supported by a nine-page affidavit replete with specific details about Defendant Herrera's connection to an apartment and multiple crimes. The affiants requested a search warrant to seek specific evidence of those crimes in a specifically outlined location. As such, a reasonable officer could rely in good faith on the warrant that Judge Hunsicker issued, authorizing them to search for that evidence.

V.      **CONCLUSION**

The Court finds that Judge Hunsicker, the magistrate judge who reviewed the application for the search warrant and approved the issuance of the warrant, had a substantial basis for concluding that probable cause was present. Further, even if probable cause was lacking as argued by the defense, the Court finds that the officers who executed the warrant relied on the warrant's authority in good faith. The search of the premises located at 7131 Beech Tree Drive in Brookview Apartments in Elkins Park, Montgomery County, Pennsylvania did not violate Defendant Herrera's Fourth Amendment rights. As such, the Court denies Defendant's Motion to Suppress. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**